UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTHER GRUNWALD, as Mother and natural Guardian of T.G., an infant, and ESTHER GRUNWALD, INDIVIDUALLY,

                      Plaintiffs,

  -against-

BON SECOURS CHARITY HEALTH SYSTEM MEDICAL GROUP, P.C., et al.,

Defendants.

No. 18-cv-3208 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiffs Esther Grunwald, as mother and natural Guardian of T.G., an infant, and Esther Grunwald, individually (collectively "Plaintiffs") commenced the instant action pursuant to the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346 (b), 2671 et seq., against multiple named defendants, including the United States of America ("USA"). Plaintiffs' claims sound in medical malpractice, lack of informed consent and loss of consortium. Presently before the Court is Defendant USA's motion pursuant to Federal Rules of Civil Procedure §§ 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)") seeking dismissal of claims asserted for lack of informed consent and loss of consortium. For the following reasons, Defendant USA's motion is GRANTED.

## BACKGROUND

    The facts as outlined below are derived from a liberal interpretation of Plaintiff's asserted allegations or matters of which the Court may take judicial notice and are accepted as true for the purpose of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

    Plaintiff Esther Grunwald ("Grunwald") is the mother of T.G., an infant. During her pregnancy to T.G., Grunwald received medical treatment in or about December 2015 at the Refuah Health Center ("Refuah") from its employee, Dr. Pedro Mencia ("Dr. Mencia"). At the time of treatment, Refuah was

a federally qualified health center eligible for coverage under the FTCA pursuant to the Federally Supported Health Centers Assistance Act. (See ECF No. 35, Stipulation So Ordered June 3, 2019). Dr. Mencia, as an employee of Refuah, provided care to Grunwald and T.G. within the scope of his employment at Refuah.

Plaintiffs allege Defendants were negligent, reckless and careless in failing to provide medical treatment in accordance with good and accepted medical standards by, *inter alia*, failing to properly interpret electronic fetal monitoring, failing to properly react to the fetal monitoring, failing to deliver the baby, T.G., in a timely method due to the non-reassuring electronic fetal monitoring, failing to properly monitor Grunwald and T.G., and failing to exercise reasonable care in preventing hypoxia, acidosis and hypoxic ischemic encephalopathy. Plaintiffs allege that Defendants' conduct and omissions were the proximate and/or a substantial factor in causing pain and suffering to Plaintiffs. As a result of T.G.'s injuries, Grunwald alleges she has been denied the societal and consortium services of her child. Lastly, Plaintiffs allege Defendants were negligent "in failing to obtain informed consent."

Prior to commencing the instant action, Plaintiff filed a notice of claim (Claim for Damage, Injury, or Death Form ("SF-95")) on June 28, 2017 with the U.S. Department of Health and Human Services ("HHS"). The SF-95 provides:

> "Beginning on December 19, 2015 through and including December 20, 2015, the defendants including Pedro Mencia MD, who upon information and belief is an employee of Refuah health Center, Inc - a Federally Qualified health center, failed to properly monitor labor and make timely delivery of infant-plaintiff, [T.G.] in light of non-assuring Electronic Fetal Monitoring (EFM). Improper use of Oxytocin with Category 2 EFM. Failed to deliver within 30 minutes with Category 3 EFM Records from Refuah Health Center, Good Samaritan Hospital and Westchester Medical center are attached. "

The HHS denied Plaintiff's claim on or about March 29, 2018.

## **LEGAL STANDARDS**

**RULE 12(b)(1)**

A claim is subject to dismissal under Rule 12(b)(1) if the court lacks of subject matter jurisdiction to adjudicate it pursuant to statute or constitutional authority. See Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). A lack of standing and a failure to exhaust administrative remedies constitute jurisdictional defects and may be addressed through a Rule 12(b)(1) motion. *Johnson v. Benheim*, 2001 WL 799569 at *4 (S.D.N.Y. July 13, 2001) (internal citation omitted). Plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction of the claim asserted. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

**RULE 12(b)(6)**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge their claim from conceivable to plausible." *Twombly*, 550 U.S. at 555. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal allegations couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of the complaint . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. "When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court must thus "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff [ ]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (*quoting Iqbal*, 556 U.S. 662) (internal quotation marks omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to the relief requested. *Twombly*, 550 U.S. at 555.

## DISCUSSION

**FTCA AND EXHAUSTION**

The FTCA is the exclusive remedy for claims against the United States, for money damages for non-constitutional injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States Government while acting within the scope of his office or employment. 28 U.S.C. § 1346(b); *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). Suits brought pursuant to the FTCA are deemed brought directly against the federal government, not against the individual government official(s). *See* 28 U.S.C. § 2679(a). A claim brought under the FTCA is deemed to name the United States as defendant. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005) (claims brought under the FTCA proceed against the United States as the allegedly liable party).

Prior to commencing an action, the FTCA requires that a claimant file an administrative claim with the appropriate federal agency and that the claim be denied. 28 U.S.C. § 2675(a). Such requirement is jurisdictional and not subject to waiver. *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983). Failure to comply with this jurisdictional prerequisite warrants dismissal of the claim for lack of subject matter jurisdiction. 28 U.S.C. § 2675; *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

Plaintiffs filed a notice of claim with the HHS on June 28, 2017. Plaintiffs exhausted their administrative remedy when it was denied in March 2018. Interpreting Plaintiffs' allegations liberally, they assert a claim for medical malpractice based on the doctor's alleged departure from accepted medical standards. Notably, no claim for lack of informed consent or loss of consortium is asserted on the SF-95 form.

**MEDICAL MALPRACTICE AND INFORMED CONSENT**

In New York, a negligent act or omission "that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician constitutes malpractice." *B.F. v. Reprod. Med. Assocs. of New York, LLP*, 136 A.D.3d 73, 80 (1st Dep't 2015); *Scott v. Uljanov*, 74 N.Y.2d 673, 674 (1989) ("[M]edical malpractice is simply a form of negligence, [and] no rigid analytical line separates the two"). The method for distinguishing between situations of "simple negligence" and "the more particularized medical malpractice standard" has been described as follows:

> negligence rules are applicable in those situations where the issue relating to the exercise of due care may be 'easily discernible by a jury on common knowledge' [;] . . . [but] where the directions given or treatment received by a patient is in issue, this requires consideration of the professional skill and knowledge of the practitioner or the medical facility and the more specialized theory of medical malpractice applies.

*Coursen v. New York Hosp.-Cornell Med. Ctr.*, 114 A.D.2d 254, 256 (1st Dep't 1986) (citations omitted).

The elements of a cause of action for negligence are: (1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of the duty; and (3) an injury to the plaintiff as a result of the breach of the duty. *Merino v. New York City Transit Auth.*, 218 A.D.2d 451 (1st Dep't 1996); *Ingrassia v. Lividikos*, 54 A.D.3d 721, 724 (2nd Dep't 2008). In order hold a physician liable for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's

injuries. *See Gross v. Friedman,* 73 N.Y.2d 721, 722–723 (1988).

A plaintiff may recover for medical malpractice based on a lack of informed consent. Lack of informed consent is a failure to disclose the alternatives to and the risks and benefits of medical treatment. N.Y. Public Health Law, § 2805–d. "To establish a cause of action for malpractice based on lack of informed consent, [a] plaintiff must allege (1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury." *Spano v. Bertocci*, 299 A.D.2d 335, 337–338, 749 N.Y.S.2d 275 (2d Dep't 2002) (internal quotation marks omitted). The standard against which a physician's conduct is measured is whether a "reasonable medical practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation." N.Y. Public Health Law, § 2805–d (1).  A plaintiff must also establish that a reasonably prudent patient would not have undergone the treatment if he or she were fully informed and that the lack of informed consent was a proximate cause of the injury. N.Y. Public Health Law § 2805–d (3).

A review of the Complaint reveals that Plaintiffs' claim for lack of informed consent is asserted in conclusory fashion ("failing to obtain informed consent").  Plaintiffs fail to assert that the medical professional failed to disclose alternative forms of treatment, failed to inform her of reasonably foreseeable risks associated with the treatment (and the alternatives) under similar circumstances, and that a reasonably prudent patient in her position would not have undergone the treatment had she been fully informed.

**LOSS OF CONSORTIUM**

The claim of loss of consortium is specific to married persons. *See Torres v. Hyun Taik Cho*, 28 Misc. 3d 435, 437 (N.Y. Sup. Ct. 2010). The claim "is designed to 'compensate for the injury to th[e marital] relationship' and 'the interest of the injured party's spouse in the continuance of a healthy and happy marital life.'" *Rangolan v. Nassau*, 370 F.3d 239, 248 (2d Cir. 2004), *quoting Millington v. Se. Elevator Co.*, 22 N.Y.2d 498, 504-05 (1968). "Consortium represents the marital partners' interest in the continuance of the marital relationship as it existed at its inception . . ., not upon some guarantee that the martial partners are free of any preexisting latent injuries . . ." *Anderson v. Eli Lilly & Co.*, 79 N.Y.2d 797, 798 (1991) (citations omitted). The claim includes, *inter alia*, the loss of support or services, elements of love, companionship, affection, society, sexual relations, and solace. *See Millington v. Southeastern Elevator Co.*, 22 N.Y.2d 498, 502 (1968). A spouse's cause of action for loss of consortium does not exist independent of the injured spouse's right to maintain an action for his or her injuries sustained. *Klein v. Metro. Child Servs., Inc.*, 100 A.D.3d 708, 711, 954 N.Y.S.2d 559, 562 (2d Dep't 2012). The claim is derivative of the impaired spouse's negligence action to the extent that the tortfeasor's liability to the impaired spouse must be established first and foremost. *Haspil v. Church of St. Cyril*, 128 Misc. 2d 968, 971 (N.Y. Sup. Ct. 1985) (internal citations omitted); *Dockery v. United States*, 663 F. Supp. 2d 111, 125 (N.D.N.Y. 2009). New York does not recognize a child's loss of parental consortium or a parent's loss of a child's affection, companionship or society. *See De Angelis v. Lutheran Med. Ctr.*, 84 A.D.2d 17, 26 (2d Dept. 1981), *aff'd* 58 N.Y.2d 1053, 55 (1983).

Defendant's partial motion to dismiss is granted in all respects. As previously discussed, Plaintiff(s) failed to assert claims for lack of informed consent and loss of consortium in its notice of claim, SF-95, to the HHS. Such failure constitutes a jurisdictional prerequisite for purposes of asserting a claim under the FTCA. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d at 510. Moreover, New

7

York does not recognize a claim for a child's loss of parental consortium or a parent's loss of a child's affection. Thus, the claims must be dismissed pursuant to Rule 12(b)(1).

To the extent Plaintiff(s) attempted to assert a claim for lack of informed consent, such claim must be dismissed pursuant to Rule 12(b)(6). It is well settled that mere conclusory allegations or legal allegations couched as factual allegations are insufficient for purposes of asserting a claim. *Rothstein v. UBS AG*, 708 F.3d at 94. Here, Plaintiff(s) claim is couched in conclusory fashion. The Complaint omits factual allegations to sufficient support each of the necessary elements of the claim, warranting dismissal.

## CONCLUSION

For the foregoing reasons, Defendant USA's motion is GRANTED. Plaintiffs' claims for lack of informed consent and loss of consortium are dismissed. Plaintiffs' only remaining claim is for alleged medical malpractice. The parties are directed to complete the attached Case Management Plan and submit it to the Court by May 20, 2020. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 29.

Dated: May 6, 2020
      White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT  			Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

                        Plaintiff(s),        **CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER**

- against -

                        Defendant(s).       _____ CV _____ (NSR)

---------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

   a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

   b. Depositions shall proceed concurrently.

   c. Whenever possible, unless counsel agree otherwise or the Court so orders,

       non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
       _____

       _____
       Nelson S. Román, U.S. District Judge